```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

DODI A. CHERAMIE              *        CIVIL ACTION

VERSUS                        *        NO: 10-69 C/W 10-1434

ERA HELICOPTERS, LLC          *        SECTION: "D"(3)
```

**ORDER AND REASONS**

Before the court are the following motions:

(1) **"Motion for Partial Summary Judgment" (Doc. No. 20)** filed by Era Helicopters, L.L.C. (ERA); and

(2) **"Motion for Summary Judgment" (Doc. No. 23)** filed by American Modern Select Insurance Company (AMSIC).

AMSIC and ERA respectively filed memoranda in opposition, and Professional Cleaning Maintenance Services, LLC filed a memorandum in response to both motions. The motions, set for hearing on Wednesday, November 17, 2010, are before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, the record, and the applicable law, the court rules.

**I. Background**

Dodi Cheramie, an employee of Professional Cleaning

Maintenance Services, LLC (PCMS), filed suit in state court against ERA, alleging in part that:

> On or about the 6th day of December, 2008, Petitioner, DODI A. CHERAMIE, **while working in the course and scope of her employment by Professional Cleaning & Maintenance Services, LLC**, sustained various injuries to her body while removing improperly loaded cargo from a helicopter at the demand of ERA HELICOPTERS, LLC at its base in Fouchon, LA. Upon information and belief, **these activities exceed the course and scope of her employment by Professional, and/or Professional's contract with ERA**.

(Petition at ¶2).[1] The court notes the inconsistency of these allegations to the extent that Cheramie first alleges that she was working "in the course and scope of her employment" with PCMS, then she alleges that her activities "exceed the course and scope of her employment" with PCMS and/or PCMS's contract with ERA.

ERA removed Cheramie's suit to federal court and filed a third party claim against PCMS for defense and indemnity. (Civil Action No. 10-69). ERA also demanded defense and indemnity from PCMS's commercial liability insurer, AMSIC, who in turn filed a declaratory action in this court seeking a declaratory judgment that it does not owe ERA defense and coverage for the claims asserted by Cheramie. (Civil Action No. 10-1434). ERA filed a

---

[1] In her deposition, Cheramie testified that she worked as a "ramp hand" who did "anything and everything with loading and unloading a helicopter." (Cheramie Dep., Doc. No.20-3, at p. 66)

counterclaim for declaratory judgment seeking its own judicial determination of coverage under the AMSIC policy, and ERA filed a third-party complaint against PCMS. Cheramie's personal injury suit and AMSIC's/ERA's declaratory judgment action are consolidated herein.

### (a) Maintenance Agreement Between ERA and PCMS

Pursuant to a maintenance agreement between ERA and PCMS, PCMS provided commercial cleaning and maintenance services for ERA. (*See* Maintenance Agreement, Doc. No. 20-6). Under this **maintenance agreement**,

> To the fullest extent permitted by law, PCMS shall defend, protect, indemnify, and hold harmless [ERA] ... from and against all suits, actions, claims, liabilities, damages and demands based upon personal injury ... whenever occurring, suffered by any of [PCMS's employees], where the Claim arises out of, is connected with, incident to, or result from or relating to **the performance of this Agreement**, and whether or not the loss or injury is caused in whole or part by the negligence of fault of [ERA] or the condition of any vehicle, vessel, aircraft, or equipment or by defect in any equipment or property of [ERA].

(*Id*. at §1.7, p. 5, emphasis added).

Under Section 3.2 of the maintenance agreement, ERA and PCMS agreed that ERA is the statutory employer of PCMS employees for purposes of La. R.S. 23:1061(A)(3), and "[i]rrespective of [ERA's] status as the statutory employer or special employer (as defined in

La. R.S. 23:1031(C)) of PCMS employees, PCMS shall remain primarily responsible for the payment of Louisiana worker's compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from ERA." (*Id*. at pp. 6-7).[2]

The maintenance agreement also provided that ERA be named as an additional insured:

> With respect to liability coverage's, to the extent of PCMS contractual indemnity hereunder, [ERA] shall be named as an additional assured with a waiver of subrogation ... in favor [ERA].

(*Id*. at p. 19).

### (b) AMSIC Insurance Policy

PCMS acquired general liability insurance from AMSIC. (*See* AMSIC Policy, Doc. No. 23-3). Under the subject **AMSIC policy** which lists PCMS as the named insured,[3]

> [AMSIC] will pay those sums that the insured [PCMS] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [AMSIC] will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

---

[2] Under LSA-R.S. 23:1031, an employee cannot sue a principal or statutory employer in tort; worker's compensation is the employee's exclusive remedy.

[3] ERA is not listed as an additional insured on the policy.

>     investigate any "occurrence" and settle any
>     claim or "suit" that may result.

(*Id.* at §I, Coverage A, (1)(a)).

Under "Exclusions" set forth in the policy, the insurance does not apply to "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  (*Id.* at §I, Coverage A, (2)(b)).  However, this Exclusion does not apply to liability for damages:

>     [a]ssumed in a contract or agreement that is
>     an "insured contract", provided the "bodily
>     injury" or "property damage" occurs subsequent
>     to the execution of the contract or agreement.

(*Id.* at §I, Coverage A, (2)(b)(2)).

Pursuant to Section V of the policy, **"insured contract"** includes:

>     That part of any other contract or agreement
>     pertaining to your business (including an
>     indemnification of a municipality in
>     connection with work performed for a
>     municipality) **under which you assume the tort
>     liability** of another to pay for "bodily
>     injury" or "property damage" to a third person
>     or organization.  Tort liability means a
>     liability that would be imposed by law in the
>     absence of any contract or agreement.

(*Id.* at §V (9)(f), emphasis added).

Under the heading "Supplementary Payments-Coverages A and B," the policy provides:

>    2.   If [AMSIC] defend[s] an insured against a "suit"
>         and an indemnitee of the insured is also named as a
>         party to the "suit", we will defend that indemnitee
>         if all of the following conditions are met:
>
>         a.   The "suit" against the indemnitee seeks
>              damages for which the insured has assumed
>              the liability of the indemnitee in a
>              contract or agreement that is an "insured
>              contract";
>
>         b.   This insurance applies to such liability
>              assumed by the insured;
>
>         c.   The obligation to defend, or the cost of
>              the defense of, that indemnitee, has also
>              been assumed by the insured in the same
>              "insured contract";
>
>         d.   The allegations in the "suit" and the
>              information we know about the
>              "occurrence" are such that no conflict
>              appears to exist between the interests of
>              the insured and the interests of the
>              indemnitee;
>
>         e.   The indemnitee and the insured ask us to
>              conduct and control the defense of that
>              indemnitee against such "suit" and agree
>              that we can assign the same counsel o
>              defend the insured and the indemnitee.

...

### (c) The Parties' Motions

In its Motion for Partial Summary Judgment, ERA seeks a declaration that PCMS is liable for defense and indemnity on Cheramie's claims. ERA further seeks a ruling that AMSIC owes coverage to PCMS for such defense and indemnity obligations based on its contention that the maintenance agreement (between ERA and

6

PCMS) is an "insured contract" notwithstanding "the fact that ERA *may* be held to be the statutory employer of Dodi Cheramie." (Doc. No. 33 at p. 4, italics added).

On the other hand, in its Motion for Summary Judgment, AMSIC seeks summary judgment that it does not owe ERA defense and indemnity on Cheramie's claims. AMSIC argues in part that the maintenance agreement between ERA and PCMS does not satisfy the definition of "insured contract" in the AMSIC policy because ERA would not incur tort liability by virtue of Section 3.2 of the Agreement, wherein ERA and PCMS agree that ERA will be Cheramie's statutory employer. AMSIC thus submits that because there is no insured contract coverage is barred pursuant to the policy's contractual liability exclusion, the worker's compensation exclusion, the employer's liability exclusion, and/or the aircraft exclusion.

AMSIC alternatively argues that, to the extent that the court does not find that ERA's Motion for Partial Summary Judgment should be denied as a matter of law, ERA's Motion for Partial Summary Judgment should nevertheless be denied because there are genuine issues of material fact as to whether coverage under AMSIC's policy is void under LSA-R.S. 22:860. In this regard, AMSIC argues that:

> when PCMS applied for the AMSIC policy, it
> falsely represented to AMSIC that the nature
> of the services it rendered were limited to

7

> "Janitorial Services." At no time did PCMS disclose that it was in the business of providing "Ramp Hand" services. This falsity affected both the acceptance of the risk and the hazard assumed by AMSIC.

(Doc. No. 34, pp. 3-4).

In its opposition memorandum, PCMS submits that the subject AMSIC policy obligates AMSIC to defend ERA against Cheramie's claims, but whether the policy extends coverage for Cheramie's claims is premature. Further, PCMS argues that it is not liable for any claims of defense and liability asserted by ERA in the declaratory action.

## II. Legal Analysis

In determining whether the subject maintenance agreement between ERA and PCMS is an "insured contract," the court finds the following language from the Fifth Circuit instructive:

> Under the [maintenance agreement], [PCMS] agreed to assume [ERA's] liability. Therefore, it appears that upon its execution by both parties the [maintenance agreement] became an "insured contract" under the [AMSIC] Policy. The "insured contract" language in the Policy does not contain any limitations regarding the "applicability" of the indemnity agreement (here, the [maintenance agreement]), or requiring that performance under the contract have begun at the time of the accident triggering liability. Moreover, [the insurer] fails to present any authority showing that an indemnity contract must be "applicable" in order for the contract to qualify as an "insured contract" under an insurance policy...We find that the "insured

8

> contract" provision is *at best* ambiguous with regard to [the insurer's] claim. We thus must apply the presumption that the provision be interpreted to provide coverage.

*Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 496 (5th Cir. 2000)(rejecting insurer's argument that a master contract cannot be an "insured contract" where the contract is not applicable because the contract's indemnification provisions were never triggered).

Here, PCMS assumed ERA's tort liability when it entered into the subject maintenance agreement with ERA. The court concludes that the subject maintenance agreement remains an "insured contract" even though the indemnity provision may never be triggered because ERA may have a viable statutory employer defense.[4] *Id., see also Clayton Williams Energy, Inc. v. National Union Fire Ins.* Co., 2004 WL 2452780 (E.D.La. 2004)(Africk, J.)(contract containing an indemnity provision that is never triggered contains an assumption of tort liability such that it can be considered an "insured contract"); *Premiere, Inc. v. Commercial Underwriters Ins. Co.*, 2003 WL 21634953 (E.D.La. 2003)(Barbier, J.)(unenforceable indemnification provision of a master contract did not preclude contract from being an "insured contract" within

---

[4] On the other hand, if it is determined that Cheramie's activities at the time of her alleged accident were outside the course and scope of her employment, ERA would have no workers' compensation defense and would be liable to Cheramie in tort.

9

the terms of insurance policy).

Because the court finds that the maintenance agreement is an "insured contract," the court need not address AMSIC's arguments that coverage is barred pursuant to the policy's contractual liability exclusion, the worker's compensation exclusion, the employer's liability exclusion, and/or the aircraft exclusion. As to AMSIC's argument that its policy is void due to PCMS's misrepresentation regarding ramp hand services, the court finds that, at this juncture, AMSIC has failed to carry their burden of proof with competent evidence to establish misrepresentation by PCMS.

Thus, the court concludes that AMSIC and PCMS owe ERA a defense as to Cheramie's claims. But the court finds that whether coverage is owed by AMSIC and PCMS is premature until it is determined if ERA was Cheramie's stautory employer.

Accordingly;

**IT IS ORDERED** that ERA's **"Motion for Partial Summary Judgment" (Doc. No. 20)** be and is hereby **GRANTED**, and AMSIC's **"Motion for Summary Judgment" (Doc. No. 23)** be and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that ERA is entitled to partial summary judgment entitling it to defense from AMSIC and PCMS on Dodi A. Cheramie's claims. The issue of coverage is premature.

New Orleans, Louisiana, this **3rd** day of **December, 2010.**

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE